**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 08 CR 351 |
| | ) | |
| RAFAEL PEREZ-RODRIGUEZ. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     Introduction**

On May 22, 2008, a federal grand jury returned a four-count indictment against Defendant Rafael Perez-Rodriguez. On November 20, 2008, the grand jury returned a five-count superseding indictment against Defendant, charging him with (i) a wire violation pursuant to the provisions of 18 U.S.C. § 1343; (ii) use of a passport secured by reason of a false statement in violation of 18 U.S.C. § 1542; (iii) unlawful possession of the identification of another during the unlawful use of a passport in violation of 18 U.S.C. § 1028A(a)(1); (iv) possession with the intent to use five identification documents not issued lawfully to Defendant in violation of 18 U.S.C. §§ 1028(a)(3) and (b)(2)(B); and (v) unlawful possession of the identification of another during the unlawful possession of the five identification documents described in Count III, in violation of 18 U.S.C. § 1028A(a)(1).

Before the Court is the government's motion in limine to admit evidence [53] as inextricably related to the charged offenses in this case. Specifically, the government seeks to introduce the following evidence: (1) Defendant's statements purportedly made in a 1990 and 1992 social security card application; (2) Defendant's statements purportedly made in a 1994 passport application; (3) Defendant's statements purportedly written in a 1994 letter to the Child Support Division of the Lake County, Indiana Prosecutor's Office; and (4) Defendant's

statements purportedly given in 2004 to a Blue Island police detective. The government contends that this evidence is admissible because it both (i) explains the circumstances surrounding the charges in this case and (ii) constitutes direct evidence of the criminal conduct charged in Counts II and III of the superseding indictment under the "inextricably intertwined" doctrine. For the reasons stated below, the Court grants the government's motion.

## II. Discussion

### A. Legal Standard

"Generally, evidence of other bad acts is not admissible to show a defendant's propensity to commit a crime, nor to show that he or she acted in conformity with that propensity on the occasion in question." *United States v. James*, 464 F.3d 699, 709 (7th Cir. 2006). The prohibition on so called "bad acts" evidence is reflected in Federal Rule of Evidence 404(b), which provides in relevant part that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." As the Seventh Circuit has explained, "Rule 404(b) is designed to address a particular evidentiary problem, guarding against the presentation of prior acts *solely* to prove bad character, because of a long history of experience has consistently shown that this type of evidence is of negligible value, inflicting more unfair prejudice than revealing helpful truths." *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002) (emphasis added). Put another way, Rule 404(b) "forbids the use of evidence of a defendant's history of illegal or unethical acts to prove that he is a person of bad character and likely therefore to have committed the crime of which he is accused in the present case, or perhaps some other, undetected crime for which he should be punished." *United States v. Paladino*, 401 F.3d 471, 474-75 (7th Cir. 2005).

However, "[i]f the evidence of other crimes or bad acts provides direct or inextricably intertwined evidence (often referred to as intricately related evidence) of the acts charged, it is not subject to the constraints of Rule 404(b)." *James*, 464 F.3d at 709; *United States v. Lane*, 323 F.3d 568, 579 (7th Cir. 2003) ("[C]ases applying the 'intricately related' doctrine have recognized that evidence concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime, is not evidence of 'other acts' within the meaning of Rule 404(b)"). "Under the 'intricately related evidence' doctrine, the admissibility of uncharged conduct turns on whether the evidence is properly admitted to provide the jury with a complete story of the crime on trial, whether its absence would create a chronological or conceptual void in the story of the crime, or whether it is so blended or connected that it incidentally involves, explains the circumstances surrounding, or tends to prove any element of the charged crime." *James*, 464 F.3d at 709; see also *Senffner*, 280 F.3d at 764 (distinguishing "[e]vidence of acts that are joined with the crime itself" from evidence of "prior bad acts" that is prohibited by Rule 404(b)). "Although inextricably related evidence does not have to satisfy [Rule] 404(b), it still must satisfy the balancing test of Rule 403." *Lane*, 323 F.3d at 579; *United States v. Hale*, 448 F.3d 971, 985 (7th Cir. 2006).

As both parties have noted, in *United States v. Taylor*, 522 F.3d 731, 734-35 (7th Cir. 2008), a Seventh Circuit panel questioned the utility of the "inextricably intertwined formula," describing it as "unhelpfully vague" in that it invites prosecutors to expand the exceptions to Rule 404(b) beyond their proper boundaries. In *Taylor*, a police officer testified that he recognized Taylor from the officer's experience in a drug and gang unit. *Id*. at 733. The court of appeals found that the officer's testimony implied that the defendant had a long history of drug and gang activity and ruled that the evidence was neither admissible as direct evidence of

3

Taylor's drug dealing under the doctrine of "inextricably intertwined" nor admissible under any of the exceptions to Section 404(b). *Id*. at 735. Nevertheless, the Seventh Circuit subsequently has reaffirmed that "[a]cts that are 'intricately related to' (or 'inextricably intertwined with') a crime charged in the indictment 'are generally admissible * * * and are not subject to the constraints of [Rule 404(b)].'" *United States v. Harris*, 536 F.3d 798, 807 (7th Cir. 2008). And, since *Taylor*, the court of appeals has continued to recognize – and to uphold evidence admitted under – the "well-established line of precedent that allows evidence of uncharged acts to be introduced at trial if the evidence is 'intricately related' to the acts charged in the indictment." *United States v. Wantuch*, 525 F.3d 505, 517-18 (7th Cir. 2008).

Defendant here stresses that he "in no way seeks to pursue" an argument that "questions the very existence of the doctrine of 'inextricably intertwined,'" but instead "only asks that this court examine the evidence sought to be introduced by the Government in light of the concerns raised by *Taylor*." [58, at 5.] Defendant further contends that the proffered evidence is (1) not relevant to proving the charged conduct, (2) inadmissible under 404(b) as evidence of other crimes, wrongs, or acts, and (3) unfairly prejudicial. With the legal standards and elements of the crimes charged in mind, the Court will address the evidence that the government seeks to introduce as "intricately related" evidence.

### 1. Statements in a 1990 and 1992 social security card application

Count Two of the superseding indictment charges that on January 28, 2007, Defendant willfully and knowingly used passport No. 212927692, the issuance of which was secured by reason of false statement, namely, the false name, date of birth, and SSN of Victim A, to enter the United States from Mexico in violation 18 U.S.C. § 1542. To prove the allegations in Count II, the government must establish that (1) Defendant willfully and knowingly made a false

4

statement in the passport application for passport No. 212927692, and (2) Defendant made such false statement with the intent to secure the issuance of a U.S. passport for his own use contrary to the laws and regulations governing the issuance of passports. Put another way, the government must show that Defendant used the passport referenced in Count II *and* that Defendant falsely stated Victim A's name, date of birth, and social security number in the 2005 application for the passport.

The government seeks to use evidence of purportedly false statements that Defendant made in two social security card applications (in 1990 and 1992) and in a 1994 passport application to explain how Defendant began falsely representing himself as Victim A and how these misrepresentations developed into the false statements that Defendant is charged with making in Count II; in the government's words, the 1990, 1992, and 1994 statements "mark the beginning of defendant's crime and go directly to proving his intent." [63, at 3.] That evidence bears on whether Defendant's false statements in his 2005 passport application originate from his first known use of Victim A's identifiers in 1990 when he applied for a social security card using Victim A's name and a birth certificate. At trial, the government intends to demonstrate that Defendant used Victim A's name first in 1990 to obtain a social security card; used Victim A's name again in 1992 to obtain a second social security card; and then in 1994, used the victim's social security number (that he received as a result of his 1992 social security card application) to obtain a passport. The government then intends to present evidence to show that when the 1994 passport expired, Defendant applied for a second passport on February 16, 2005. In the 2005 application, the government intends to prove that Defendant again falsely listed the same victim's name, date of birth, and social security number.

Given the legal standards for the crimes sought to be proved, the Court finds that the purportedly false statements that Defendant made in the two social security card applications and the a 1994 passport application are inextricably intertwined with the passport fraud charged in Count II, because the absence of such evidence would "create a chronological or conceptual void in the story of the crime." See *Wantuch*, 525 F.3d at 517; see also *United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006) (upholding admissibility of evidence offered to show "the genesis and nature" of criminal activity); *Senffner*, 280 F.3d at 764 ("acts concerning the chronological unfolding of events that led to an indictment or other circumstances surrounding the crime [are] not evidence of 'other acts' within the meaning of Fed. R. Evid. 404(b)"). Moreover, the evidence not only is admissible because it "explains the circumstances surrounding" the charged conduct, but also because it could be used to prove the actual elements of the charged crime – namely, that Defendant willfully and knowingly made false statements in his 2005 passport application, and therefore did not act by ignorance, mistake, or accident. *James*, 464 F.3d at 709; see also *Lane*, 323 F.3d 568 (upholding admissibility of evidence under intricately related doctrine where evidence "was both direct evidence of [Defendant's] fraudulent activity as well as intricately related to the crimes charged," and further observing that in light of that ruling, "we need not address [Defendant's] concerns under Rule 404(b)").

### 2. Statements to prosecutor's office and police detective

Count III charges that Defendant knowingly used, without lawful authority, a means of identification of another person, namely, Victim A's name and date of birth, during and in relation to the unlawful use of a passport described in Count II, in violation of 18 U.S.C. § 1028A(a)(1). With respect to Count III, the government must prove that (1) Defendant

knowingly used the means of identification of another person, (2) without lawful authority, and (3) during and in relation to the passport fraud charged in Count II of the superseding indictment.

In its motion in limine, the government represents that it intends to present evidence that the means of identification that Defendant used as alleged in Count III belonged to another person and that Defendant knew that such means of identification belonged to another person. In order to prove Defendant's knowing violation of the law, the government seeks to admit a letter from Defendant in which he contests a claim of past-due child support by writing: "This is to inform you that you have contacted the wrong [Victim A] * * * * [T]here [are] two men in this country with identical names. One born here the other in Mexico." The letter was signed in the name of Victim A. The government also seeks to introduce evidence of Defendant's statements in 2004 to a Blue Island police detective to the effect that Defendant knew that someone had accused him of identity theft but still claimed the victim's means of identification as his own.[1]

Defendant's purported statements concerning his past-due child support and his statements to the police detective are relevant to whether Defendant knew that he was using Victim A's means of identification illegally when he used passport No. 212927692. Such evidence also would contradict a defense by Defendant that he did not know that the identity he was using belonged to another person. In addition, it helps to complete the story of Defendant's alleged theft of Victim A's identity over a period of years that culminated in the indictment of Defendant for passport fraud and aggravated identity theft. See *James*, 464 F.3d at 709; *Senffner*, 280 F.3d at 764 ("Acts satisfy the inextricably intertwined doctrine if they complete the

---

[1] The Seventh Circuit has not decided whether the government is required to prove that Defendant knew the identity he was unlawfully using belonged to another person. That issue currently is pending before the Supreme Court of the United States. See *United States v. Flores-Figueroa*, 274 Fed. Appx. 501 (8th Cir. 2008), *cert. granted* 129 S.Ct. 457 (2008). The government has tendered amended jury instructions that, if given, would require the jury to find that Defendant knew that the means of identification that he is charged with unlawfully using belonged to another person in order to return a guilty verdict on Count III.

story of the crime on trial; their absence would create a chronological or conceptual void in the story of the crime; or they are so blended or connected that they incidentally involve, explain the circumstances surrounding, or tend to prove any element of, the charged crime"). In sum, because Defendant's prior statements to the police officer and the Lake County Prosecutor explain the circumstances surrounding and tend to prove the elements of the charged crime, they are admissible under the inextricably intertwined doctrine. *Wantuch*, 525 F.3d at 505.

Finally, the concerns mentioned by the court of appeals in *Taylor* do not appear to be implicated here. In *Taylor*, the officer's offending testimony was a general statement about the defendant and his reputation on the street. Such evidence may suggest to the jury that "defendant is prone to commit crimes or is otherwise a bad person," thereby "implying the jury needn't worry overmuch about the strength of the government's evidence." *Taylor*, 522 F.3d at 735. In such cases, application of Rule 404(b) "guard[s] against the presentation of prior acts *solely* to prove bad character" (*Senffner*, 280 F.3d at 764), by requiring the government to show that the evidence at issue is admissible under one of the specific exceptions in Rule 404(b) or under the "no confusion" exception also discussed in *Taylor*. Here, by contrast, the evidence that the government seeks to introduce relates to stealing the identity of the same individual whose identity Defendant is accused of stealing in the crimes charged. Unlike the evidence in *Taylor*, the evidence at issue here places Defendant's actions in context, helps to explain the origins of the crime charged, and in fact tends to prove elements of the charged conduct in any event.

### 3. Federal Rule of Evidence 403

As noted above, "[a]lthough inextricably related evidence does not have to satisfy 404(b), it still must satisfy the balancing test of Rule 403." *Lane*, 323 F.3d at 579. Under Rule 403, evidence should be admitted unless "its probative value is substantially outweighed by the

danger of unfair prejudice." Fed. R. Evid. 403.  The Seventh Circuit has "emphasized that most relevant evidence is, by its very nature, prejudicial, and that evidence must be *unfairly* prejudicial to be excluded."  *United States v. Curry*, 79 F.3d 1489, 1496 (7th Cir. 1996) (emphasis in original); see also *United States v. Hattaway*, 740 F.2d 1419, 1425 (7th Cir. 1984) ("[V]irtually all evidence submitted by the prosecution is prejudicial to the defendant; the relevant inquiry is whether any unfair prejudice from the evidence substantially outweighs its probative value").  When balancing the probative value of a piece of evidence against its potential prejudice, courts lean in favor of admitting evidence where the acts help to explain the circumstances of the crime charged, or "where the acts provided the background for, or development of, the crime charged, and where the acts completed the story of the crime on trial." *United States v. Lloyd*, 71 F.3d 1256, 1265 (7th Cir. 1995).

The government anticipates that Defendant may contend at trial that he did not know the identity he was using belonged to Victim A or that his actions were committed out of ignorance or mistake.  Defendant's purported statements to the Lake County Prosecutor's office and the police detective bear on whether he was aware that the identity he was using belonged to someone else.  His written statements in the social security card and passport applications similarly bear on whether his conduct was deliberate or unintentional.  Thus, because the evidence tends to prove an element of the charged crime and also explains the circumstances surrounding the charged crime, it is not unfairly prejudicial and will be admitted.  See *Wantuch*, 525 F.3d at 518 (recognizing that evidence is not unfairly prejudicial when the evidence is probative to counter a defense).

**III.    Conclusion**

For all of the reasons stated above, the Court grants the government's motion in limine to admit evidence [53] as inextricably related to the charged offenses in this case and will allow the government to introduce evidence of the following:  (1) Defendant's statements purportedly made in a 1990 and 1992 social security card application; (2) Defendant's statements purportedly made in a 1994 passport application; (3) Defendant's statements purportedly written in a 1994 letter to the Child Support Division of the Lake County, Indiana Prosecutor's Office; and (4) Defendant's statements purportedly given in 2004 to a Blue Island police detective.

Dated:  January 14, 2009                    _____
                                            Robert M. Dow, Jr.
                                            United States District Judge